UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

J&J SPORTS PRODUCTIONS, INC. as Broadcast
Licensee of the July 16, 2005 HOPKINS/TAYLOR
Program,

           Plaintiff,    REPORT AND
                   RECOMMENDATION
  -against-
                   06-CV-334 (CBA) (RER)

ANGEL M. RIVERA, Individually, and as officer,
director, shareholder and/or principal of A & E
DIAMOND CUTS INC. and A.E. DIAMOND CUTS
INC. d/b/a DIAMOND CUTS INC., and A & E
DIAMOND CUTS INC. and A.E. DIAMOND CUTS INC.
d/b/a DIAMOND CUTS INC.,

           Defendants.
------------------------------------------------------------------------X

**RAMON E. REYES, JR., U.S.M.J.:**

Introduction

  Plaintiff, J&J Sports Productions, Inc. ("J&J Sports"), brings this action against defendants Angel M. Rivera, A & E Diamond Cuts Inc., and A.E. Diamond Cuts Inc. (collectively, "Diamond Cuts"), alleging that they violated the Federal Communications Act of 1934, codified as amended at 47 U.S.C. § 605. Compl. ¶ 21. More specifically, plaintiff alleges that defendants engaged in the unlawful interception and exhibition of the Hopkins/Taylor pay-per-view boxing event on July 16, 2005. Compl. ¶ 18.

  Upon plaintiff's application and in light of defendants' failure to appear in or otherwise defend this action, on April 13, 2006 the Clerk of the Court noted defendants' default pursuant to Fed. R. Civ. P. 55(a). Docket Entry 8. The Honorable Carol B. Amon then referred this case to me for report and recommendation on the issue of damages. Plaintiff has submitted, *inter alia*, a

memorandum of law ("Pl. Memo") and the affidavits of its President, Joseph Gagliardi, dated April 6, 2006 ("Pl. Aff.") and its counsel, Julie Cohen Lonstein, dated April 10, 2006 ("Lonstein Aff."), in support of its application for damages. Docket Entry 6.

Facts

Plaintiff was granted the rights to distribute the July 16, 2005 Hopkins/Taylor boxing match (the "Event"), including all undercard bouts and the entire television broadcast via closed circuit television and encrypted satellite signal. Compl. ¶ 15. Plaintiff entered into agreements with various entities in the State of New York allowing them to publicly exhibit the Event to their patrons. Compl. ¶ 16. Defendants did not contract with plaintiff for the rights to exhibit the Event. Pl Aff. ¶ 6.

The satellite signal that transmitted the Event was encrypted to protect its access from those who did not contract with plaintiff to lawfully broadcast the Event. Defendants would not have the ability to receive the signal without 1) the use of a "black box" which is purchased for a fee and when installed on a cable TV line will descramble reception of pay-per-view broadcasts; 2) misrepresenting their commercial nature to the cable company in order to purchase the broadcast at the residential price of $54.95; or 3) the use of an illegal cable drop or splice from an adjacent apartment or home that had already purchased the broadcast at the residential price. Pl. Aff. ¶ 10.

Plaintiff hired independent auditors to identify establishments that were unlawfully exhibiting the Event. Pl. Aff. ¶ 4. Prior to visiting the establishments, the auditors were given a list of the locations that were authorized to exhibit the Event. *Id*. at ¶ 5. On July 16, 2005, defendants intercepted and received the signal for the Event without authorization. Defendants

then broadcast the Event to the patrons within defendants' barbershop located at 259 13th Street, Brooklyn, NY 11215-4801. Compl. ¶¶ 10, 18.

The auditor who visited defendants' barbershop on the night of the Event submitted an affidavit dated July 27, 2005 ("Piracy Aff.") stating that during his visit he observed the exhibition of a portion of the Hopkins/Taylor boxing match at defendants' barbershop. Piracy Aff. at 1. According to the auditor, there were two television sets and ten people in the barbershop. *Id.*

Plaintiff filed the complaint on January 23, 2006. Docket Entry 1. Defendants were served on February 11, 2006. Docket Entries 2-4. Defendants failed to appear or otherwise move with respect to the complaint. Plaintiff then moved for default judgment on April 12, 2006, seeking statutory damages with pre-judgment interest, and investigative and attorney's fees and costs. Docket Entry 6. On April 18, 2006, Judge Amon referred plaintiff's motion for default judgment to me for a report and recommendation on damages. By Order dated April 18, 2006, the parties were directed to submit papers in support of their calculations of damages. Docket Entry 9. Defendant has not submitted any papers in opposition to plaintiff's damages calculations.

Discussion

A.   <u>Liability</u>

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992).

The allegations of plaintiff's complaint establish the elements of liability required to state a claim under § 605.[1] Section 605(a) provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the ... contents... of such intercepted communication to any person." 47 U.S.C. § 605(a). Section 605(a) has been held to apply to the interception of cable communications originating as a satellite or radio transmission. *See Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir.), *cert. denied*, 519 U.S. 929 (1996). J&J Sports alleges that defendants used an illegal device to intercept and receive J&J Sports' satellite signal and then broadcast the Event without authorization. Compl. ¶¶ 18, 19. Defendants' alleged conduct constitutes a violation of 47 U.S.C. § 605.

B.  Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup*, 973 F.2d at 158. Rather, claims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Id*. An evidentiary presentation is required so that the court may ensure that there is a basis for the damages sought before entering judgment in the amount demanded. *Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*,

---

[1] It is well-settled case law that a claimant who establishes liability under both 47 U.S.C. § 553 and § 605 may only recover damages under one section. *See Am. Cablevision of Queens v. McGinn*, 817 F. Supp. 317, 320 (E.D.N.Y. 1993). Plaintiff, therefore, elects to recover damages under § 605. Pl. Memo at 5.

4

951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40.  Plaintiff in this case seeks an award of statutory damages with pre-judgment interest, and investigative and attorney's fees and costs. Pl. Memo at 9.  Defendant has not submitted any opposition to the papers submitted by plaintiff. Accordingly, a hearing is not warranted.

A claimant who has established liability under Section 605(a) may recover an award of statutory damages of not less than $1,000 or more than $10,000, as the court considers just, for each violation of § 605(a).  *See* 47 U.S.C. § 605(e)(3)(C)(i)(II).  The court may consider such factors as "the pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant,...the financial needs and earning ability of the defendant...as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose." *Cablevision Sys. Corp. v. De Palma*, No. 87 Civ. 3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (quoting *Cablevision Sys. Dev. Co. v. Cohen*, No. 84 Civ. 1155, slip. op. at 4-5 (E.D.N.Y. May 20, 1988).

Some courts have awarded flat damages amounts when calculating damages.  *See Home Box Office v. Champs of New Haven*, 837 F. Supp. 480, 484 (D. Conn. 1993) (awarding $10,000 in statutory damages); *Kingvision Pay-Per-View Ltd. v. Brito*, No. 05 Civ. 1042, 2006 WL 728408, at *2 (S.D.N.Y. Mar. 20, 2006) (awarding $5,000 in statutory damages); *KingVision Pay-Per-View, Ltd. v. Ruiz*, No. 04 Civ. 6566, 2005 WL589403, at *2-3 (S.D.N.Y. Mar. 9, 2005) (awarding $5,000 in statutory damages).  Other courts have assessed damages by multiplying the number of patrons by the amount an individual would pay to view the program at home on a pay-per-view channel.  *See Garden City Boxing Club v. Bello*, No. 05 Civ. 1300, 2005 WL 2496062, at * 2 (E.D.N.Y. Sept. 20, 2005) (awarding statutory damages of $54.95 per patron);

5

*Time Warner Cable of New York City v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (awarding statutory damages of $50 per patron); *Cablevision Systems Corp. v. 45 Midland Enterprises*, 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same).

Plaintiff seeks a minimum statutory award of $824.25 or $54.95, the residential price of the event on pay-per-view, times 15, the capacity of the establishment. Pl. Memo at 6. This Court feels that the per patron analysis in the instant case will result in too low of an award and instead recommends a flat damages amount of $5,000.00. Plaintiff has invested millions of dollars in the promotion of broadcasts and signal piracy has led to a serious erosion of its sales. Pl. Aff. ¶ 12. Additionally, signal piracy has had a negative effect upon lawful customers in the form of increased costs. *Id*. ¶ 15. Further, there is evidence in the record that this is not the first time defendants have illegally intercepted one of plaintiff's boxing matches. Lonstein Aff. ¶ 6.

Plaintiff also seeks enhanced statutory damages of up to $100,000 contending that defendants' wilfully violated the statute for commercial advantage or private gain. *See* 47 U.S.C. 605(e)(3)(C)(ii). Wilfulness is defined as "disregard for the governing statute and an indifference for its requirements." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126-27 (1985). Defendants intercepted and broadcast the program without authorization. Furthermore, defendants could not have done so without using an illegal device. *See Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distributions systems.").

It is not clear, however, that defendants committed the wilful violation for *commercial advantage*. Plaintiff's auditor observed a portion of the Event in defendants' barbershop at

11:16 p.m. Piracy Aff. at 1. This Court notes that there is no evidence that defendants were conducting business the night of the broadcast or making any money as a result of the broadcast. There is no indication that any of the people inside were getting hair cuts. The auditor did not pay a cover charge nor was there any food or beverages to buy. Piracy Aff. at 1. Furthermore, there is nothing in plaintiff's memo to indicate that the unlawful interception and exhibition of the program resulted in commercial gain to the defendants. It is unlikely that patrons would return to defendants' barbershop for services simply because defendants exhibited a boxing match the night before.

This Court is satisfied that an award of $5,000.00 in statutory damages is sufficient to deter future violations by small business owners such as defendants. *See Kingvision v. Olivares*, No. 02 Civ. 6588, 2004 WL 744226, at *4 (S.D.N.Y. Apr. 5, 2004) (holding that damages should be proportional to the size of the establishment and noting that small businesses need less monetary deterrence to prevent theft). Therefore, I respectfully recommend that plaintiff's request for enhanced statutory damages be denied.

In addition to statutory damages, plaintiff seeks pre-judgment interest on the damages at the legal rate. Pl. Memo at 8. Pursuant to N.Y. C.P.L.R. § 5001, a court may award interest on a cause of action from the time of accrual until the verdict or decision, except in personal injury actions or where there is an award of punitive damages. "Statutory damages under the Communications Act are 'analogous to punitive damages in that they are designed to deter others from similar infringing activity.'" *See Garden City Boxing*, 2005 WL 2496062, at * 4 (*quoting Olivares*, 2004 WL 744226, at *5). Accordingly, I respectfully recommend that plaintiff's request for pre-judgment interest be denied.

7

Plaintiff also seeks to recover attorney's fees. An award of fees and costs is mandatory pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). As directed by the Second Circuit in *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (1983), plaintiff has submitted a declaration of its attorney and purported contemporaneous time records. Plaintiff asserts that it incurred $950.00 in attorney's fees. Lonstein Aff. ¶ 3. In her affidavit, counsel sets forth a description of the billing rates of her firm which are as follows: $200.00 per hour for work performed by an attorney and $75.00 per hour for work performed by a paralegal. *Id*. ¶ 4. The rates charged by counsel are reasonable. *See Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp.*, 215 F.R.D. 60, 64 (E.D.N.Y. 2003) (finding rates of $400 for a partner and $180 for a third-year associate reasonable); *New Leadership Comm. v. Davidson*, 23 F. Supp.2d 301, 310 (E.D.N.Y. 1998) (finding rates of $275 for a partner and $200 for an associate reasonable).

Counsel asserts it incurred $550.00 in costs which consists of filing fees and the cost of service of process which this Court finds reasonable. Plaintiff also seeks reimbursement of auditing fees in the amount of $350.00. *See* Pl. Aff. ¶ 9, Ex. D. Section 605(e)(3)(B)(iii) does not provide for the recovery of investigative costs or auditing fees. Accordingly, I respectfully recommend that plaintiff's request for auditor's fees be denied.

I therefore recommend that plaintiff be awarded $950.00 in fees and $550.00 in costs for a total of $1,500.00.

## Conclusion

For the foregoing reasons, I respectfully recommend that default judgment be entered against defendants in the amount of $6,500.00, comprised of $5,000.00 in statutory damages and $1,500.00 in attorney's fees and costs. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Chambers of the Honorable Carol B. Amon within ten days of receiving this Report and Recommendation and, in any event, on or before **May 15, 2006.** Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989). Plaintiff is hereby directed to serve copies of this Report and Recommendation upon defendants at their last known address, and to file proof of service with the Clerk of the Court.

                                                                           /s/

Brooklyn, New York                                    Ramon E. Reyes, Jr.
May 1, 2006                                             United States Magistrate Judge